**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1726

WESTPORT INSURANCE CORPORATION,

Plaintiff - Appellee,

versus

DAVID ALBERT, a public accountant doing
business in Montgomery County; CAROLYN QUILL,
a public accountant doing business in
Montgomery County; RUBINO & MCGEEHIN, a
Maryland professional corporation doing
business in Montgomery County,

Defendants - Appellants,

and

BRUCE BURTOFF, M.D.,

Defendant.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Alexander Williams, Jr., District Judge.
(CA-04-2315-8-AW)

Argued:  September 19, 2006          Decided:  December 6, 2006

Before MICHAEL and GREGORY, Circuit Judges, and Thomas E. JOHNSTON,
United States District Judge for the Southern District of West
Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Michael and Judge Johnston joined.

——————————

**ARGUED:** Charles Elliott Wilson, Jr., MCCARTHY WILSON, Rockville, Maryland, for Appellants. Jeffrey John Ward, THOMPSON, LOSS & JUDGE, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Ronald W. Cox, Jr., MCCARTHY WILSON, Rockville, Maryland, for Appellants.

——————————

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

David Albert, Carolyn Quill, and Rubino & McGeehin ("Appellants") appeal the decision of the United States District Court for the District of Maryland granting Westport Insurance Corporation ("Westport") summary judgment under Federal Rule of Civil Procedure 12(c). Westport sought a declaratory ruling that it did not have to provide coverage under either of two accounting malpractice insurance policies for a claim made against Appellants. For the reasons discussed below, we affirm the ruling of the district court.

I.

This case arises from the management of the estate of Ruth F. Bernstein. In the 1996 codicil to her will, Bernstein named Donald Albert, a licensed attorney and professional accountant, as personal representative for her estate. In that codicil, Bernstein directed that the bulk of her estate be distributed to her nephew Bruce Burtoff, his wife, and a generation-skipping trust for his children.

In December 1998, Bernstein entered into a Private Annuity Agreement ("PA Agreement") with R.B. Investments, LLC, a company Burtoff had created. The purpose of the agreement was to provide Bernstein with a quarterly income while transferring funds to her beneficiaries in a way that avoided estate and gift taxes.

3

Bernstein died in January 1999, and on August 31, 1999, Albert sued Burtoff to challenge the PA Agreement. Burtoff sent Albert a letter on August 22, 2001, requesting that he withdraw the suit and stop "wasting" estate funds. On November 29, 2001, Burtoff filed a petition in the Superior Court of the District of Columbia to remove Albert as personal representative of Bernstein's estate and a motion to expedite the removal.

In his filings, Burtoff accused Albert of being a "malfeasant," providing "sketchy and inadequate accounting statements," "breach[ing] his fiduciary duties," "mismanag[ing] Estate property," and failing "to perform material duties of his office." (J.A. 52-54.) Albert received these complaints on December 3, 2001. On January 30, 2002, Burtoff filed a complaint in the Superior Court of the District of Columbia, alleging accounting and legal malpractice against Albert, Quill, Rubino & McGeehin, Jim Farris, and Babirak, Albert, Vangello & Shaheen, PC.[*]

Appellants had purchased successive professional malpractice insurance policies from Westport. The 2001 policy promised to defend and indemnify Appellants from any accounting malpractice claims made against and reported by them during the period from January 1, 2001, to January 1, 2002. The 2002 policy covered the Defendants from January 1, 2002, to January 1, 2003. The 2002

---

[*]The legal malpractice claims were covered and defended by another insurance company.

4

policy also included a "Prior Knowledge Exclusion" that excluded from coverage:

> any act, error, omission, circumstance, or "personal injury" occurring prior to the effective date of this "policy" if any insured at the effective date knew or could have reasonably foreseen that such act, error, omission, circumstance or "personal injury" might be the basis of a "claim."

Albert gave Westport notice of the Burtoff suit on February 19, 2002.

Westport instituted its declaratory judgment action in the District of Maryland on July 20, 2004. Westport sought a ruling that neither the 2001 nor the 2002 policy covered Burtoff's malpractice claim against Appellants. Appellants filed an answer and counterclaim on September 14, 2004, to which Westport replied on September 30, 2004. Westport filed a motion for judgment on the pleadings on November 11, 2004. Appellants then filed for leave to amend their answer and counterclaim. The district court granted summary judgment to Westport on May 31, 2005, finding that the 2001 policy did not cover the Burtoff malpractice claim and that the 2002 policy prohibited coverage of it under the prior knowledge exclusion. After the court denied Appellants' post-judgment motions on September 22, 2005, Appellants appealed to this Court.

Appellants raise three issues on appeal. They first argue that the district court erred in granting summary judgment to Westport. They also claim that the district court abused its discretion when it denied their motion to amend their answer and

5

counterclaim.  Finally, they assert that the district court abused its discretion when it denied their motion for reconsideration.

II.

Under Federal Rule of Civil Procedure 12(c), a district court should treat a motion for judgment on the pleadings as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court."  Fed. R. Civ. P. 12(c).  Because the district court treated Westport's motion for judgment on the pleadings as a motion for summary judgment, we review de novo the district court's grant of summary judgment to Westport.  See Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden to show that there is no genuine issue of material fact, and the court "must assess the evidence as forecast in the documentary materials . . . in the light most favorable to the party opposing the motion." Charbonnages de Fr. v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

We review a district court's denial of a motion to amend a pleading for abuse of discretion.  Laber, 438 F.3d. at 428.  We

6

similarly review a district court's denial of post-judgment motions made under Federal Rules of Civil Procedure 59 and 60 for abuse of discretion. <u>Collision v. Int'l Chem. Workers Union</u>, 34 F.3d 233, 237 (4th Cir. 1994); <u>Nat'l Credit Union Admin. Bd. v. Gray</u>, 1 F.3d 262, 265 (4th Cir. 1993).

## III.
### A.

Westport seeks a ruling that the prior knowledge exclusion of the 2002 policy exempts the company from defending Appellants against Burtoff's malpractice suit. The policy excludes from coverage any "act, error, omission, circumstance, or 'personal injury' " occurring prior to January 1, 2002, that the insured "knew or could have reasonably foreseen," even if the actual claim against the insured was made during the policy period. Westport contends that no genuine issue of material fact exists as to whether Appellants could have reasonably foreseen in 2001 that Burtoff would bring a malpractice suit against them in 2002. Westport argues that the allegations Burtoff made in his removal petition would have put any reasonable accountant on notice that a malpractice suit was forthcoming. Appellants disagree, arguing that the petition did not and could not have provided them with such notice. We agree with Westport.

7

Because Westport brought this action under the diversity jurisdiction granted to the federal courts by 28 U.S.C. § 1332, we look to the law of Maryland to determine the standard by which we judge whether the prior knowledge exclusion applies. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Maryland courts use an objective standard of reasonableness. See Maynard v. Westport Ins. Co., 208 F. Supp. 2d 568, 571 (D. Md. 2002); Culver v. Cont'l Ins. Co., 1 F. Supp. 2d 545, 546 (D. Md. 1998). We therefore consider whether there is any material fact in dispute that would have put an objectively reasonable accountant on notice that a malpractice suit was forthcoming.

It is undisputed that Burtoff's removal petition made numerous allegations against Appellants. Burtoff claimed that Albert failed to file accounting statements, "breached his fiduciary duty," "mismanaged Estate property," was "unable to discharge the duties and powers of his office," "failed to account for the assets of the Estate," and acted as a "malfeasant." Burtoff also claimed that Albert had "enriched himself through wasteful litigation" concerning the estate and had delivered "sketchy" and "materially and intentionally inaccurate" accountings when pressed. (J.A. 52-54.) Accusations of that sort should have put a reasonable accountant on notice that Burtoff could next file a claim for damages. No facts that Appellants offer change the effectiveness of that notice. Furthermore, the record reflects that Appellants

8

considered, prior to the effective date of the 2002 policy, "whether or not to report [Burtoff's petition] to the insurance company." (J.A. 324.) In light of the allegations in and the consideration Appellants gave to the removal petition, they should have foreseen the 2002 malpractice suit and reported it to Westport.

We find as a matter of law that the allegations Burtoff made in his petition to remove Albert as the personal representative of Bernstein's estate would have put a reasonable accountant on notice that a malpractice suit was forthcoming. The prior knowledge exclusion included in the 2002 policy prohibits coverage for the malpractice action Burtoff filed in 2002. Summary judgment for Westport is therefore proper.


B.

In their original answer and counterclaim, Appellants admitted that they had knowledge of Burtoff's claim prior to 2002. On December 10, 2004, they sought leave to amend to correct their mistaken understanding of the word claim. In its summary judgment ruling on May 31, 2005, the district court denied their motion to amend.

Federal Rule of Civil Procedure 15(a) allows a party to amend a pleading once as a matter of course before a responsive pleading is served. After that opportunity has passed, the party may amend

9

only by leave of the court. The Rule states that leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). We have interpreted the Rule to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986).

In its denial of the motion to amend, the district court pointed out that any amendment Appellants might make would be futile. The court concluded that even if it allowed Appellants to retract their admission that they knew about the forthcoming claim, it would still find that they reasonably could have foreseen that claim. Because the evidence shows that an objectively reasonable accountant would have foreseen the malpractice claim prior to 2002, we find that the district court did not abuse its discretion in denying Appellants' motion to amend.

C.

After the district court's ruling, Appellants moved the court for reconsideration, a new trial, or relief from the order. They claimed that Westport should be required to provide coverage under the 2001 policy as a "claims made" policy. The district court denied those motions.

10

We have held that a court may only grant a post-judgment motion under Federal Rule of Civil Procedure 59(e) "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005).  If the motion has been made under Federal Rule of Civil Procedure 60(b), a court should grant it only to "accomplish justice" because the rule "is extraordinary and is only to be invoked upon a showing of exceptional circumstances."  Compton v. Alton S.S. Co., 608 F.2d 96, 102 (4th Cir. 1979).  A court should not grant reconsideration when the movant attempts "to raise arguments which could have been raised prior to the issuance of the judgment" or "to argue a case under a novel legal theory that the party had the ability to raise in the first instance."  Pac. Ins. Co. v. Am. Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998).

The district court rejected Appellants' post-judgment motions as an attempt to raise a new argument.  The court stated that "[t]he appropriate time for Defendants to present their theory of coverage under the 2001 policy was in opposition to Plaintiff's motion for judgment on the pleadings."  (J.A. 383.)  Appellants argue that they were bound by the mistaken admissions that they made in their answer and counterclaim and thus could not have consistently made the argument that the 2001 policy covered the

11

malpractice suit. The district court properly noted that Appellants could have pleaded their new claim in the alternative to their argument that the 2002 policy covered the action.

The district court also rejected the argument that Maryland law should force Westport to defend Appellants under the 2001 policy. Maryland Insurance Code section 19-110 states:

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured . . . has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

Md. Code. Ann., Ins., § 19-110 (LexisNexis 1997). This law, however, applies only to "claims made" policies and not "claims made and reported policies." Maynard, 208 F. Supp. 2d at 574. The Insuring Agreement of the 2001 policy states that the insured must give "immediate written notice" of any claim arising within the policy period. This statement identifies the policy as a "claims made and reported" policy not covered under Maryland Insurance Code § 19-110. Appellants provided notice of Burtoff's claim against them to Westport on February 19, 2002, and thus did not satisfy the reporting requirement of the 2001 policy.

We find that the district court did not abuse its discretion when it denied Appellants' post-judgment motions. Appellants should have raised their argument that the 2001 policy covered the malpractice action in their opposition to Westport's motion for

12

summary judgment.  Further, because the 2001 policy is a "claims made and reported" policy, Maryland law provides Appellants no relief.

## IV.

Because Appellants have not demonstrated that any material fact is genuinely at issue, and because the district court did not abuse its discretion in denying Appellants' motions, the decision of the district court is affirmed.

<u>AFFIRMED</u>

13